## HADEN *v.* SWEPSTON.

64  477
74  525

### Opinion delivered December 11, 1897.

GUARDIAN—CONCLUSIVENESS OF ORDER OF REMOVAL.—When the probate court removes a guardian, it has no power at a subsequent term to rescind the order of removal and permit him to stand on his former bond; and in such case the surety on such bond will be liable only for the funds and other property in the guardian's hands at the time of removal, or that should have been in his hands at that time. (Page 481.)

REMOVAL OF GUARDIAN—SURETY'S LIABILITY FOR INTEREST.—Where a guardian is removed from his office, without any order being made for the disposition of funds then in his hands, his surety is not liable for interest subsequently accruing on such funds. (Page 481.)

GUARDIAN—LIABILITY FOR RENTS.—While the real estate of a ward is in the hands of the administrator of his ancestor, his guardian is not chargeable with the rental value thereof, but only with the rent actually received by him. (Page 481.)

EQUITY—SURCHARGING SETTLEMENT—PRACTICE.—On a bill in equity to surcharge a settlement in the probate court of a guardian's account, where the probate judgment is confirmed, if it would be burdensome to the parties to resort to the probate court for enforcement of its judgment, a final decree will be entered. (Page 483.)

Appeal from Crittenden Circuit Court in Chancery.

FELIX G. TAYLOR, Judge.

*Wm. M. Randolph & Sons,* for appellant.

No breach of the guardian's bond is shown, and therefore no right of action against his surety. There was never a final settlement made, nor an order to pay over the balance in the guardian's hands. Sand. & H. Dig., § 5722; *ib.* §§ 5717, 5718; Gould's Digest, ch. 81, § 10; Sand. & H. Dig., § 3592, note E; 21 Ark. 447; 25 Ark. 108; 14 Ark. 170; 24 Ark. 550; 33 Ark. 662; 35 Ark. 93; 39 Ark. 145; 45 Ark. 495; 23 Ark. 93; 21 Ark. 408; 21 Ark. 450; 14 Ark. 172; 14 Howard, 418; 4 Munford, 289; 2 Edw. 66; 52 Ark. 499. The probate court had power and sufficient reason to discharge the guardian, and its action in this respect is legal and binding. Sand. & H. Dig., §§ 3564, 3566; 18 Ark. 600; 25 Ark. 108;

30 Ark. 206. But after term time the court lost control over its judgment, and could not revoke it. Gould's Digest, ch. 48; Mansfield's Dig. ch. 42; Const. art. 8, § 34; 104 U. S. 410; 117 U. S. 665; 2 Ark. 66; 5 Ark. 23; 6 Ark. 100; 25 Ark. 212; 26 Ark. 94; 12 Ark. (7 Eng.) 95; 14 Ark. 244; 52 Ark. 316; Mansf. Dig. § 3909; 33 Ark. 454; 35 *ib.* 123; 51 *ib.* 281. This action on the part of the probate court did not revive the liability of the sureties on the first bond. 1 Swan (Tenn.), 388; 24 Ala. 480; 21 Ark. 447; 25 Ark. 119; 34 Conn. 109; 44 Iowa, 15; 17 Cal. 93; 1 Upper Canada Com. Pleas Rep. 406; 1 Beach (U. S.), 140; 5 Cal. 106. The circuit court had no jurisdiction of the guardian's account. This is part of the jurisdiction of the probate court. Mansf. Dig., § 1384; Sand. & H. Dig., § 1141; Const. art. 8, § 34,; 52 Ark. 341; Sand. & H. Dig., §§ 3564, 3632; 23 Ark. 93; 33 Ark. 575; 33 Ark. 727; 34 *ib.* 63; 48 *ib.* 544; 40 *ib.* 393; 36 *ib.* 529; 40 Ark. 219; 38 Ark. 494; 36 Ark. 383; 36 Ark. 63; 43 Ark. 171. The court had no right to order a new report to be filed by the referee, without proof of the loss of the original report filed, and of the correctness of the substituted report. 2 Ark. 60; 11 Ark. (6 Eng.) 349; *ib.* 360 and 367; Gould's Dig., ch. 143; Mansf. Dig., § 5349, 4862; Gantt's Dig., § 4862; Sand. & H. Dig., § 6109. The appointment of Buck as administrator *ad litem* was void. 27 Ark. 339; 51 *ib.* 82; art. 7, § 34, Constitution of Ark.; 24 Ark. 569; 28 *ib.* 253; 41 *ib.* 165; 31 *ib.* 541; 36 *ib.* 529; 51 Ark. 361; 23 Ark. 94–95; 52 *ib.* 350; 52 Ark. 499.

*Adams & Trimble,* for appellees.

The circuit court had jurisdiction to review the settlements of the guardian for fraud. 63 Ark. 450; 33 Ark. 727; 42 Ark. 86. The sureties are proper parties. 33 Ark. 727. Fraud being shown, the accounts may be set aside altogether, and settlements required *de novo.* 42 Ark. 186–190.

BUNN, C. J. This is a bill in the Crittenden circuit court, in chancery, by the appellees, Mary W. Swepston and her husband, W. W. Swepston, against John W. Guerrant, her guardian, and the appellant, J. R. Jenkins, one of the sureties on his guardian's bond (the other surety not being sued), to

surcharge and falsify the various settlements of said guardian made to and confirmed by the probate court of said county, and for judgment for the balance due said ward, to be shown upon a correction of said accounts.

The facts are: On the 7th of July, 1871, Mrs. Lydia Jenkins of St. Francis county died intestate, leaving surviving her, as her sole heir at law, the said Mary W. Swepston, who was then Mary W. Denton, a child seven years old, and a considerable amount of real and personal property, consisting of a life insurance policy for $5,000, and real estate in Crittenden county, and perhaps other property.

It appears that, soon after the death of Lydia Jenkins, one Henry Hurlbert was appointed by the probate court of St. Francis county administrator of her estate, and took charge of the same as such; but it does not appear when he ceased to be such, or whether or not he is still such administrator. The record shows, however, that on the 23d day of August, 1875, the probate court of St. Francis county, on the petition and showing of Hurlbert as administrator of the estate of Lydia Jenkins, ordered and directed him to turn over the real estate of said estate (named in the petition, being the real estate involved in this litigation, in so far as its rents and profits are concerned) to the guardian of the said Mary W. Denton, only heir as aforesaid, namely, the said John W. Guerrant. When or how this order was complied with, or whether it was ever complied with formally, does not appear; but, presumably, the parties acted upon and in accordance with it in a reasonable time after it was entered.

On the 30th October, 1871, John W. Guerrant was appointed by the probate court of Crittenden county guardian of the said Mary W. Denton, gave bond as such in the sum of $10,000, with appellant Jenkins and one R. C. Wallace as his sureties, and entered upon the discharge of his duties as such guardian; his ward residing with him until she became of age and married appellant, W. W. Swepston, in 1882.

Guerrant failed to file an inventory or make a settlement until in 1876, assigning, as his reasons for the delinquency, matters that could only interest the political antiquarian. In 1876, however, he was cited by the probate court to appear and

file his statement, on his failing to do which he was regularly and formally removed on the 14th October, 1876; but in January, 1877, he appeared, and asked and obtained leave to file his settlement; and this settlement covered the whole time of his guardianship, and was satisfactory to the probate court, and in due course was confirmed by it.    When this settlement was filed, the probate court undertook to rescind its order removing him as guardian, made at its previous October term, and reappointed him, permitting him to stand on his former bond, "as ascertained to be still sufficient," as the expression is in other jurisdictions.

This settlement showed a balance in the hands of the guardian amounting to the sum of $5,160.05.   Guerrant, under his new appointment,. continued to make his annual settlement with apparent regularity, until the institution of this suit, which was on November, 1883.    Indeed, he is charged with having filed a final settlement after the institution of this suit. But the record shows that he filed his final settlement on the 10th of July, 1882, before the institution of this suit, and about the time his ward arrived at her majority, and this settlement was examined and ordered to lie over until the July term, 1883, for exceptions.    The record does not state when this order was made.   No further order was made.

The bill sets up fraud in the guardian's various settlements, .in this, that he, for example, in his first settlement failed to charge himself with interest, as he would have done had he, as required of him, made annual settlements (that is to say, interest upon the balance struck in each annual settlement), but, on the contrary, treating the first five years of his guardianship as one period, he charged only simple interest, thereby cheating and defrauding his ward; also in this, that he failed to charge himself with the rents of the real estate, alleged to have contained 240 acres of land in cultivation; and in this, that his expense account against his ward for maintenance and education was excessive.

As stated, the surety, J. R. Jenkins, alone appeals, and we have nothing to do with the case as against the principal, except incidentally, as it may affect the surety; and as Guerrant, the guardian for whom Jenkins was surety, was regularly re-

moved on the 14th of October, 1876, and was not lawfully
re-appointed again (at least so as to effect Jenkins in any way),
our inquiry is confined mainly, if not altogether, to the acts and
doings of the guardian from his appointment as such until his
removal on the 14th of October, 1876. The chancellor prop-
erly took this view of the case, and his decree, in a general way,
is based upon that theory.

The matters and things presented by the bill and answers
and the evidence in this cause were referred to a special mas-
ter by the chancellor; and his report, involving his findings in
the matter, was adopted by the court, and a decree rendered, in
which the master's findings became the findings of the court,
and they will be so referred to in this opinion.

The surety Jenkins, by reason of the removal of his
principal on the 14th of October, 1876, was and is only re-
sponsible for the funds and other property really in the hands
of the guardian at that time, or that should have been in his
hands, and for the faithful payment and delivery of the same
over to his lawful successor, or his ward, or others entitled, on
the orders and directions of the probate court.

In this case there seems to have been no lawful guardian
after Guerrant was removed on the 14th of October, 1876, and
the ward did not arrive at age until about the time of the insti-
tution of this suit; and, above all, there does not appear to
have been any order of the probate court making a disposition
of the funds in the hands of the guardian. The funds, so far
as this surety was and is concerned, were still in the hands of
his principal,—just where they should have been. Besides,
there was no one to loan them out under the orders of the court
or otherwise,—a condition of things for which this surety is in
no wise responsible on his bond. It follows, therefore, that the
appellant is not liable for interest on the amount on hand when
his principal was discharged, which accrued after that time.

Again, while it is charged that the real estate of Lydia
Jenkins came into the possession of Guerrant immediately after
his appointment as guardian, yet the charge is made in the face
of the record; for that shows that as late as August, 1875, the
administrator of Lydia Jenkins was petitioning the court to
make an order directing him to deliver possession over to said

31

guardian, as all the debts of her estate had been paid, and there was no longer a necessity for him to hold said real estate.

It is not meant here to say that Guerrant should not be charged with what he received from said administrator for rents of this real estate during the time, for he should have been, and should be now, charged with every cent he received for or on account of his ward from Hurlbert, the administrator,—not only that which came to Hurlbert as rents of the real estate, but from any other source, so that it was the property, in fact, of the ward and held for her.

The two ways of putting this matter, it is readily seen, make a wonderful difference in making up accounts. In the one case he is held liable for the rental value of the land, and in the other for just what he received of these rents collected and paid over by another lawfully entitled to receive the rents; and he claimed to have rendered an account for the sum so received from Hurlbert.

Whether the expense account against the ward, during the time we are now considering, was exorbitant or not, we have no means of determining. In fact, the complaint on this score is mostly, if not altogether, applicable to subsequent accounting of the guardian. They may be, after all, merely matters to be corrected on appeal only, and not by bill.

From the method the master observed in restating the account, it is almost impossible to ascertain just what he would show to have been the balance on the 14th of October, 1876, but the chancellor makes it the sum of $6,120.99. The master allowed interest for and against the guardian from the time debits were and should have been charged, and credits asked, until the date of final decree, November 15, 1894,—a period from eighteen to twenty-three years. No interest accruing after November 15, 1876, should have been taken into the calculation. The guardian had already charged himself with interest on all sums coming into his hands during the five years covered by his first settlement, at the rate of 6 per cent. per annum, amounting in the aggregate to $985.23, and this had been passed upon by the probate court. Whether the amount was correctly stated in his account, we cannot say. The principal fund was $5,000 insurance on the life of Mrs. Jenkins.

There is no reason to say that the probate court was not made acquainted with all the facts concerning this and the other items of debit, so as to be able to determine the proper amount of interest due. If so, it may be that its judgment in this respect could only be the subject of appeal. However, it is needless to make any ruling on this subject.

From the facts in the record, and the view we take of the law applicable thereto, we are unable to see that the findings of the chancellor (deducting amounts growing out of errors of law pertaining thereto) would make the amount for which this surety is liable to be $6,120.99, as decreed, or any other sum in excess of $5,160.05. The appellant surety is liable for that much, according to his own showing and the judgment of the probate court (which, in this particular matter, it is not proper to disturb), together with lawful interest from the 15th November, 1894, the date of the decree; and while the bill, as against him, is not sustained, yet, as the chancery court obtained jurisdiction of the case, and it would be burdensome to all to resort to the original court for enforcement of this judgment against him, final decree will be entered here.

During the pendency of this action Jenkins died, and the cause was revived in the name of his administrator, J. T. Haden, and the judgment was against him as such. The decree of the lower court is modified, so as to make the amount $5,160.05, bearing lawful interest from the 15th day of November, 1894, and with this modification it is affirmed. Appellees will pay the costs of this appeal.